GRAGGS, ET AL. v. BAILEY.

1. B placed money in the hands of R, to enter at a land office, a tract of land for him; the land was entered with this money, by R, *in his own name*, and a patent was issued accordingly; afterwards, B authorized R to sell the land for him, which was done, and the notes for the payment of the purchase money taken payable to the latter; R delivered the notes to B, who brought suits thereon, and recovered judgments in the name of R, for his use, which remained unsatisfied: *Held*, that B, by suit in equity, might enforce the equitable lien of the vendor for the purchase money; that although the notes were not assigned to him by indorsement, yet it must be intended that he received them in payment of a debt previously existing, or created simultaneously with the transfer.

Writ of Error to the Court of Chancery sitting in Chambers county.

THE defendant in error filed his bill, setting forth that in the year 1837, he employed William Richards to purchase for him, in the land office at Montgomery, a tract of land, known and described as fraction C, of section thirty, in township twenty-four, of range twenty-five, situate in the county of Chambers, and containing 36 50-100 acres. In order to make such entry, complainant furnished Richards with $45 87½, who entered therewith the land above described, in his own name, alledging as an excuse therefor, that he had forgotten the first name of the complainant; and a patent was

accordingly issued to Richards, in due form, on the 1st day of August, 1838.

Richards professed to consider himself as holding the land for the complainant's benefit, and was authorized by the latter to sell it for him; which he accordingly did on the 23d February, 1838, to Frederick Quattlebum, and received from the purchaser one note for $82 52, payable on the 25th December, 1838; the other for the sum of $100, payable twelve months thereafter. Richards, upon the sale thus made, executed a bond by which he undertook to convey the title to his vendee, and at the same time took from him the notes payable to himself or bearer, which he handed over to the complainant. These notes, upon maturity, were sued by complainant, in the name of Richards, for his use, and judgments recovered; on the former in the circuit court of Chambers, in April, 1840; on the latter, in the county court of the same county, in July of the same year. Both of these judgments remain unsatisfied, saving only one dollar which has been collected by the sale of property under an execution issued on one of them.

It is charged, that Frederick Quattlebum, on the 30th July, 1839, executed a writing on the bond he had received from Richards, indicating that he had sold the land in question to Wm. J. Wardlaw; and on the 9th November, 1840, Wardlaw made a similar indorsement on the bond, stating that he had made a sale of the premises to Philip Quattlebum.

Complainant, a short time previous to exhibiting his bill, demanded of P. Quattlebum the possession of the land in question, informing him that he was about applying to chancery for the sale of the land; who accordingly executed to the complainant a deed, relinquishing all his right, title and interest to the same, on the 18th February, 1842, and yielded up the possession.

Afterwards, William Graggs, who had the direction of a writ of *fieri facias* which issued from the county court of Chambers, on a judgment in favor of Sylvanus Walker against Wm. Richards, rendered on the 30th July, 1840, caused the same to be levied on the land in question, and at a sale thereof, on the 1st Monday in March, 1842, became the purchaser;

and has, or will receive the sheriff's deed. Graggs was advised, previous to his purchase, of the complainant's equitable lien, and his intention to enforce it. The bond executed by Richards to F. Quattlebum, with the writings thereon, are in complainant's possession, and together with the deed of relinquishment by P. Quattlebum, are exhibited with the bill.

The complainant prays that the tract of land in controversy may be sold, and the proceeds applied to the satisfaction of the judgments against F. Quattlebum—and for such other relief as may be proper. All the persons mentioned in the bill as having been concerned in the purchase or sale of the land, are prayed to be made defendants, and that process of *subpœna* may be awarded against them.

The defendants, P. Quattlebum, Graggs and Wardlaw, answered the bill, and it is taken *for confessed* as to the others —after the service of subpœna as to one, and publication as to the other. But neither of the answers assume to deny the allegations of the bill—merely declaring their ignorance of the facts, and calling upon the complainant to prove them.

The cause was heard upon bill, answers, exhibits and depositions, when the chancellor was of opinion, that the complainant would have been entitled had he asked it, to the land, under a trust resulting from Richards' purchase for his benefit. *Further*, that he was entitled to an equitable lien upon the land, to satisfy the judgments recovered upon the notes given by F. Quattlebum to Richards, for his benefit. It was accordingly referred to the Register to ascertain the amount due on the judgments; and that unless the same be paid by the defendants, or some one of them, within sixty days, then all their right, title and interest in the land be barred, and the register proceed to sell the same, &c.; and from the proceeds, retain the costs of the sale, and this suit, *&c.*

The testimony establishes the following facts, viz : The execution of the bond by Richards to F. Quattlebum, and the giving of the notes by the latter in consideration of the purchase of the land thus evidenced.

The deposition of the defendant, Graggs, makes a part of the transcript sent up, which, it appears, was taken at complainant's instance. He proves the execution of the writing by which F. Quattlebum professes to sell the land to Ward-

law—says he caused it to be sold under execution, and pur-
chased it under the impression that it was Richards' proper-
ty; as the latter, as well as complainant, both informed him
that the money with which ithad been entered, was return-
ed or paid to the complainant; and the patent had issued in
Richards' name. This deposition was adduced by the defen-
dants, the complainant declining to offer it. The judgments,
the satisfaction of which were sought by the bill, were admit-
ted to be as alledged.

L. B. ROBINSON, for the plaintiffs in error, made the follow-
ing points.   1. The complainant permitted Richards to pur-
chase and sell the land in his own name, without disclosing
his agency, and cannot assert any claim against the purcha-
ser: to have protected his equitable rights, a purchaser under
Richards should have had notice of the character in which
Richards acted.   2. To have entitled the complainant to en-
force a lien in equity, the notes should have been indorsed
to him.   [5 Ala. Rep. 363.]   3. The complainant does not
make out such a case as entitles him to succeed upon the
proof.

COLLIER, C. J.—Hall's ex'rs v. Click, et al. 5 Ala. Rep.
363, is unlike the present.   In that case, the plaintiff's testa-
tor had received the note of a third person, in part payment
of property, without indorsement, and with the understand-
ing that the party transferring it should not be liable for its
payment.   The consideration of the note was land, which
the party transferring it had sold to the maker.   It was
held, that a bill to enforce the equitable lien could not be
maintained by the plaintiff.   We there place our decision up-
on the ground that the contract under which the testator be-
came the proprietor of the note, was not such as to transfer
the lien, and as the payee had stipulated that he should not
be chargeable with the maker's default, it could not be en-
forced by his transferee.

In Roper v. McCook, and another, 7 Ala. Rep. 318, it was
explicitly decided, as the leading question in the cause, that
the equitable lien of the vendor of land will pass to his as-
signee of a note taken from the vendee, in part payment of

Graggs, et al. v. Bailey.

the purchase money, and will not be lost, though the assignee neglect to sue the maker for so long a time as to discharge the assignor from liability upon his indorsement. So, it has been held, that the lien of the vendor for the purchase money, may be enforced, not 'only against the vendee, but his assignee, with notice, and this although the vendor may have conveyed the title in due form. To authorize the assertion of the lien in equity against a derivative purchaser, it is not necessary that the vendor should have employed a legal remedy without success. [5 Porter's Rep. 452; 3 Ala. R. 302 ]

The evidence very satisfactorily establishes the sale of the land by Richards to F. Quattlebum, and the making and delivery of notes, such as those the complainant put in suit; and the fact that they were in his possession, and judgments have been rendered in the name of Richards for his use, in the absence of opposing proof, show, *prima facie*, that he was their rightful proprietor. Assuming that the land in question was the property of Richards, and was sold upon his own account, and still, we think, the complainant is entitled to the relief he seeks. In this view, it must be presumed that the complainant received the notes from their payee, either in payment of a pre-existing debt, or a debt simultaneously created ; and upon either hypothesis, Richards would be liable for the *original debt*, when the term of credit stipulated by the notes, expired. [Chitty on Bills, 9, Am. ed. 195, *et post.*] As to Richards then, the lien was not lost, and we think silently as an incident to the notes, it passed to the complainant.

We have thrown out of view every thing that is alledged in the bill, going to show a resulting trust as against Richards ; because no relief is prayed upon the case in that point of view.

Our conclusion is, that the decree must be affirmed.